## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

IN RE:

| | |
|---|---|
| **WAYNE BAILEY, INC.,** | **CASE NO. 18-00284-5-SWH**<br>**CHAPTER 11** |
| **DEBTOR.** | |

---

| | |
|---|---|
| **JOHN C. BIRCHER, III, PLAN TRUSTEE FOR WAYNE BAILEY, INC. and WAYNE BAILEY, INC.,** | |
| *Plaintiffs,* | |
| vs. | **ADV. PRO. NO. 20-_____-5-SWH** |
| **NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,** | |
| *Defendant.* | |

---

### COMPLAINT

---

**NOW COME** Plaintiffs JOHN C. BIRCHER, III, PLAN TRUSTEE FOR WAYNE BAILEY, INC. (the "Plan Trustee"), and WAYNE BAILEY, INC. (the "Debtor") (the Plan Trustee and the Debtor are collectively referred to herein as, "Plaintiffs"), by and their through undersigned counsel, and complaining of Defendant NATIONWIDE AGRIBUSINESS INSURANCE COMPANY ("Defendant"), hereby allege, assert, and state as follows:

## INTRODUCTION AND NATURE OF ACTION

1.      This is an action, commenced by Plaintiffs, against Defendant, seeking the

following relief:

A.   Avoidance, recovery, and preservation for the benefit of the estate, a payment and transfer, totaling $40,184.00, that was made to, and received by, Defendant within the ninety-day period preceding the filing of the above-captioned bankruptcy proceeding, as preferential pursuant to §§ 547(b) and 550 of the Bankruptcy Code;

B.   Avoidance, recovery, and preservation for the benefit of the estate, payments and transfers totaling at least $355,401.11 or in such amount as otherwise determined by the Court, that were made to, and received by, Defendant within the four-year period preceding the filing of the above-captioned chapter 11 bankruptcy proceeding, as constructively fraudulent pursuant to §§ 544, 548, and 550 of the Bankruptcy Code and the Uniform Voidable Transactions Act, codified by the North Carolina General Assembly in N.C. Gen. Stat. § 39-23.1 *et seq.* (the "UVTA"); and

C.   Avoidance, recovery, and preservation for the benefit of the estate, payments and transfers totaling $80,493.69 or in such amount as otherwise determined by the Court, that were made to, and received by, Defendant, as unauthorized post-petition transfers pursuant to § 549 and 550 of the Bankruptcy Code.

## JURISDICTION, AUTHORITY, AND VENUE

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 151,

157, and 1334, and it is a "core proceeding" because it seeks determination, avoidance

and recovery of a preference, *id.* § 157(b)(2)(F), arises in and concerns matters affecting

the administration of estate in the above-captioned case, *see id.* §157(b)(2)(A), and

affects rights duly established, and relates to the adjustment of the debtor-creditor

relationship, under the Bankruptcy Code. *Id.* §157(b)(2)(O).

3.      The Court has jurisdiction to enter a final Order in this matter; however, and to the extent the Court finds any claim for relief asserted herein to be a non-core proceeding, Plaintiffs consent to entry of a final Order in this matter in accordance with 28 U.S.C. § 157(c)(2).

4.      This Court possesses the requisite authority to hear this matter and grant the relief requested by Plaintiffs herein, pursuant to the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1408 and 1409, as all of the actions complained of and giving rise to the claims alleged herein arose in this judicial district, within which Plaintiffs and Defendant reside and/or regularly conduct their respective business operations and affairs.

6.      All of the actions and transfers at issue were completed and undertaken within, or utilized the services of, individuals, entities, and persons located within the State of North Carolina

## **IDENTIFICATION OF THE PARTIES**

7.      The Debtor, a corporation formed and existing under the laws of the State of North Carolina, with a principal place of business in Chadbourn, Columbus County, North Carolina, is a fourth-generation family business engaged in the packing, marketing, shipping, and sale of sweet potatoes, of which it sells more than 100 million pounds annually.

8.      The Plan Trustee, an individual citizen and resident of Craven County, North Carolina, is an attorney with WHITE & ALLEN, P.A., who was appointed and entrusted with the performance of the following duties pursuant to the terms of the Order Confirming First Amended Plan of Reorganization [D.E. 655]:

> From and after the Effective Date, the Plan Trustee shall serve under this Plan and shall discharge all of the rights, powers, and duties set forth in this Plan. The Plan Trustee, acting on behalf of the Debtor, shall have the following rights, powers and duties: (i) to employ and compensate the professionals as the Plan Trustee may select to carry out its duties under this Plan; (ii) to review, investigate and (if appropriate) object to or seek equitable subordination of Claims against the Estate except for those rights to equitable subordination released by this Plan; (iii) to investigate, prosecute and/or settle (as provided in this Plan) all Causes of Action; (iv) to voluntarily engage in arbitration or mediation with respect to any Cause of Action; (v) to calculate and make all distributions to be made pursuant to this Plan that are to be made by the Plan Trustee; (vi) to seek estimation of contingent or unliquidated Claims under Section 502(c) of the Bankruptcy Code; (vii) to review, investigate and (if appropriate) object to the claim(s) of any creditor; and (viii) to take all other actions in furtherance of the implementation of this Plan. The Plan Trustee shall not be disqualified from hiring any professional because such professional previously represented the Debtor or any creditor of the Debtor, if in the business judgment of the Plan Trustee, such prior representation will not cause an actual conflict of interest in the representation to be undertaken.[1]

9.      The term "Causes of Action," to which the Plan Trustee was given authority to investigate, prosecute and/or settle includes, *inter alia*, "[c]laims pursuant to 11 U.S.C. §§ 362, 510, 542, 543, 544 through 550, or 553 . . . ." Order Confirming First Amended Plan of Reorganization [D.E. 655] at 6.

---

[1] All capitalized terms, including "Causes of Action," are given the definitions ascribed in the First Amended Plan of Reorganization [D.E. 459], as confirmed by the Confirmation Order.

10.     At all times relevant hereunder, and between January 21, 2014, and January 21, 2018, George G. Wooten, Jr., was the controlling officer and shareholder of the Debtor.

11.     At all times relevant hereunder, Wooten was married to his wife, Alice Wooten ("Mrs. Wooten").

12.     On or about June 2, 2004, an entity, Wooten Land & Timber, LLC ("WLT") was organized under the laws of the State of North Carolina as a limited liability company.  A copy of the Articles of Organization of Wooten Land & Timber, LLC filed with the North Carolina Secretary of State are attached hereto as **EXHIBIT A** and incorporated herein by reference.

13.     At all times relevant hereunder, and since the organization of WLT, Wooten has served as its sole member and manager.

14.     Defendant, upon information and belief, is a corporation formed and existing under the laws of the State of Iowa, and maintains a principal place of business located at 1100 Locust Street, Des Moines, Iowa 50391, and the registered agent for Nationwide, accepting service of process at 505 5th Avenue, Suite 729, Des Moines, Iowa 50309, is Corporation Service Company.

15.     Defendant, upon information and belief, provides commercial agribusiness insurance products to a variety of entities involved in the agricultural and produce industries throughout the State of North Carolina and across the United States of America.

16.    Defendant, upon information and belief, is a direct wholly-owned subsidiary of, and its insurance products are underwritten by, Nationwide Mutual Insurance Company.

17.    Defendant is an entity doing business and subject to service of process pursuant to Rule 7004(b) of the Federal Rules of Bankruptcy Procedure anywhere in the United States.

## FACTUAL ALLEGATIONS

18.    Wooten, along with his wife, own all right, title, and interest in the following parcels of real property located in Columbus County, North Carolina:

| Property | Tax Parcel No. | Property Description / Location / Reference |
|---|---|---|
| Wooten 1 | 25897 | Old Hog Market Property – 9.18 Acres<br>200 S. Elm Street, Chadbourn, NC |
| Wooten 2 | 76701 | Benton Farm Land – 120.35 Acres<br>1626 Porter Swamp Road, Chadbourn, NC |
| Wooten 3 | 86460 | Williamson Farm – 123.28 Acres<br>Old Lumberton Road / Highway 242, Chadbourn, NC |
| Wooten 4 | 23536 | Green Warehouse<br>401 East Kirkland Street, Chadbourn, NC |
| Wooten 5 | 29847 | Benton Farm House<br>1626 Porter Swamp Road, Chadbourn, NC |
| Wooten 6 | 21612 | Lewis Farm – 54.33 Acres<br>Off Old Highway 74, Chadbourn, NC |
| Wooten 7 | 21468 | Home Farm – 120.74 Acres<br>393 Kissam Lane, Evergreen, NC |
| Wooten 8 | 26044 | 408 East First Avenue, Chadbourn, NC<br>*(Owned by Alice Wooten Only)* |
| Wooten 9 | 25618 | Stevens Property – 5.2 Acres<br>120 South Elm Street, Chadbourn, NC<br>*(Owned by Alice Wooten Only)* |
| Wooten 10 | 24683 | Lot on Baldwin Street, Chadbourn, NC<br>*(Owned by Alice Wooten Only)* |
| Wooten 11 | 21472 | Reuben Farm – 90 Acres<br>234 Ethan Lane, Chadbourn, NC<br>*(Partially-Owned by George G. Wooten Jr.)* |
| Wooten 12 | 21112 | Resident of George & Alice Wooten – 1.18 Acres |

| | | 160 Kissam Lane, Evergreen, NC<br>*(Owned by Adam Wooten and George G. Wooten, III)* |
|---|---|---|
| Wooten 13 | 23442 | Land Adjacent to Main Office of Wayne Bailey, Inc.<br>*(Partially-Owned by George G. Wooten Jr.)* |
| Wooten 14 | 23441 | 210 South Mill Street, Chadbourn, NC<br>*(Partially-Owned by George G. Wooten Jr.)* |
| Wooten 15 | 23579 | Guyton Property<br>*(Partially-Owned by George G. Wooten Jr.)* |

(collectively, the "Wooten Property"). Copies of the Columbus County Property Tax Record Cards for the Wooten Property are attached hereto as **EXHIBIT B** and incorporated herein by reference.

19. WLT, in addition, owns all right, title, and interest in the following parcels of real property located in Columbus County, North Carolina:

| Property | Tax Parcel No. | Property Description / Location / Reference |
|---|---|---|
| WLT 1 | 20852 | Evergreen Property – 202.82 Acres<br>Off Highway 1574, Evergreen, NC |
| WLT 2 | 20722 | Evergreen 2 Property –189.76 Acres<br>4626 Old Boardman Road, Evergreen, NC |
| WLT 3 | 25503 | WATEC Warehouse<br>1792 Joe Brown Highway, Chadbourn, NC |
| WLT 4 | 21239 | Harrison Farm – 23.41 Acres<br>Highway 242, Chadbourn, NC |
| WLT 5 | 30857 | Wingfield Property –  91 Acres<br>6127 Andrew Jackson Highway, Chadbourn, NC |
| WLT 6 | 93464 | Part of Blake Property – 12.8 Acres<br>Off Joe Brown Highway, Chadbourn, NC |
| WLT 7 | 94135 | Part of Biggs Property –  30 Acres<br>Off Old Highway 74, Chadbourn, NC |
| WLT 8 | 25477 | Square    Deal    Warehouse    –    3    Acres    &<br>Improvements<br>215 East Strawberry Blvd, Chadbourn, NC |
| WLT 9 | 95381 | B. Moore Farm – 49.2 Acres<br>1397 Rough Horn Road, Chadbourn, NC |
| WLT 10 | 20984 | Evergreen/Edmund    Property    –    .34    Acres    &<br>Improvements<br>47 Hilda Road, Chadbourn, NC |
| WLT 11 | 21448 | Biggs Property – 90 Acres<br>9388 Old Highway 74, Chadbourn, NC |
| WLT 12 | 93465 | Part of Blake Property – 24.5 Acres |

| | | Off Joe Brown Highway, Chadbourn, NC |
|---|---|---|
| WLT 13 | 23576 | 12.96 Acres on Joe Brown Highway, Chadbourn, NC |
| WLT 14 | 26072 | Yates Property – 37.92 Acres<br>State Road 1537, Chadbourn, NC |
| WLT 15 | 90703 | 6.6 Acres<br>Tommie Wooten Road, Chadbourn, NC |
| WLT 16 | 90704 | 6.6 Acres at 11 35 Tommie Wooten Road, Chadbourn, NC |
| WLT 17 | 96788 | Part of B. Moore Farm<br>Off Rough Horn Road, Chadbourn, NC |
| WLT 18 | 91012 | Chadbourn Property – 18.06 Acres<br>Off Stack Turner Road, Chadbourn, NC |
| WLT 19 | 93467 | 24.6 Acres on Joe Brown Highway, Chadbourn, NC |

(collectively, the "WLT Property"). Copies of the Columbus County Property Tax Record Cards for the WLT Property are attached hereto as **EXHIBIT C** and incorporated herein by reference.

20.    As evidenced by the foregoing, the Debtor held no right, title, or interest in the Wooten Property or the WLT Property, between January 21, 2014, and January 21, 2018.

21.    The Debtor filed a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code on January 21, 2018 (the "Petition Date"), BK Case No. 18-00284-5-SWH (the "Bankruptcy Case").

22.    Defendant, prior to the Petition Date, for the calendar years ending December 31, 2014 (the "2014 Calendar Year"), December 31, 2016 (the "2016 Calendar Year"), December 31, 2017 (the "2017 Calendar Year"), issued and provided commercial property ("COP"), commercial package ("CPP"), commercial umbrella ("CU"), and

workers' compensation ("WCC") insurance coverage which was invoiced and paid by the Debtor.

23.     Defendant, post-petition, and for the calendar year ending December 31, 2018 (the "2018 Calendar Year"), issued and provided COP, CPP, CU, and WCC insurance coverage, for which the Debtor was invoiced.

24.     The insurance coverage issued by Defendant for the 2014 Calendar Year is summarized as follows:

| Policy | Term | Annual Premium Amount |
|---|---|---|
| Commercial Property (COP 1119960C) | 1/1/2014 – 1/1/2015 | $102,386.99 |
| Commercial Package (CPP119960B) | 1/1/2014 – 1/1/2015 | $140,542.00 |
| Commercial Umbrella (CU119960B) | 1/1/2014 – 1/1/2015 | $31,984.00 |

A copy of the Premium Bill, prepared by Defendant on February 11, 2014, and remitted to the Debtor, is attached hereto as **EXHIBIT D** and incorporated herein by reference.

25.     The insurance coverage issued by Defendant for the 2016 Calendar Year is summarized as follows:

| Policy | Term | Annual Premium Amount |
|---|---|---|
| Commercial Property (COP 1119960C) | 1/1/2016 – 1/1/2017 | $125,123.00 |
| Commercial Package (CPP119960B) | 1/1/2016 – 1/1/2017 | $140,995.00 |
| Commercial Umbrella (CU119960B) | 1/1/2016 – 1/1/2017 | $38,372.00 |
| Workers' Compensation (WCC119960B) | 1/1/2016 – 1/1/2017 | $158,533.00 |

A copy of the Billing Statement, prepared by Defendant on or about February 10, 2016, and remitted to the Debtor, is attached hereto as **EXHIBIT E** and incorporated herein by reference.

26.    The insurance coverage issued by Defendant for the 2017 Calendar Year is summarized as follows:

| Policy | Term | Premium Amount |
|---|---|---|
| Commercial Property (COP1119960C) | 1/1/2017 – 1/1/2018 | $121,561.00 |
| Commercial Package (CPP119960B) | 1/1/2017 – 1/1/2018 | $154,857.00 |
| Commercial Umbrella (CU119960B) | 1/1/2017 – 1/1/2018 | $40,150.00 |
| Workers' Compensation (WCC119960B) | 1/1/2017 – 1/1/2018 | $185,231.00 |

A copy of the Premium Bill 575041, prepared by Defendant and remitted to the Debtor, is attached hereto as **EXHIBIT F** and incorporated herein by reference.

27.    The insurance coverage issued by Defendant for the 2018 Calendar Year is summarized as follows:

| Policy | Term | Annual Premium Amount |
|---|---|---|
| Commercial Property (COP1119960C) | 1/1/2018 – 1/1/2019 | $104,187.00 |
| Commercial Package (CPP119960B) | 1/1/2018 – 1/1/2019 | $130,776.00 |
| Commercial Umbrella (CU119960B) | 1/1/2018 – 1/1/2019 | $17,714.00 |
| Workers' Compensation (WCC119960B) | 1/1/2018 – 1/1/2019 | $145,523.00 |

A copy of the Premium Bill 597396, prepared by Defendant and remitted to the Debtor, is attached hereto as **EXHIBIT G** and incorporated herein by reference.

28.     The COP insurance coverage, issued by Defendant for the 2014 Calendar Year, the 2016 Calendar Year, the 2017 Calendar Year, and the 2018 Calendar Year, provided property insurance coverage for parcels of real property that were not owned by the Debtor, including certain parcels of the Wooten Property and the WLT Property.

29.     At all times relevant hereunder, the Debtor had no obligation to pay insurance premiums for, or otherwise bear the costs and expenses relating to insurance coverage for the Wooten Property, the WLT Property, or any other parcels of real property in which it neither owned or held a possessory interest.

30.     The Debtor was not an obligor or guarantor of any portion of the indebtedness associated with the insurance coverage that was issued by, and covering, the Wooten Property, the WLT Property, and any other property in which it did not hold an ownership interest.

31.     The Debtor, at no time relevant hereunder, did not own, nor did it acquire, any right, title, interest, or ownership in any portion of the Wooten Property or the WLT Property.

32.     The Debtor did not execute, sign, or assume any obligation or duty to obtain or incur any indebtedness with respect to property insurance coverage that was issued by Defendant for the Wooten Property, the WLT Property, or any other parcels of real property in which it does not hold any ownership or possessory interest.

33.     The Debtor is not obligated, nor liable, for repayment of any insurance premiums to Defendant for the COP insurance coverage on the Wooten Property and the WLT Property, from the 2014 Calendar Year, through the 2018 Calendar Year.

34.    On October 2, 2018, in the Bankruptcy Case, the Court entered an Order Confirming First Amended Plan of Reorganization [D.E. 655] (the "Confirmation Order"), which confirmed the First Amended Plan of Reorganization [D.E. 459] proposed by the Debtor, as amended and modified (the "Plan") (the Plan and the Confirmation Order are collectively referred to herein as, the "Confirmed Plan").

35.    Prepetition, and despite the fact that it was not obligated for payment of any portion of the indebtedness arising from the COP insurance coverage on the Wooten Property, the WLT Property, and other non-debtor property, and between March 25, 2014, and the Petition Date, the Debtor remitted numerous payments to, or for the benefit of, Defendant, totaling the sum of at least $1,310,219.99, of which the sum of $355,401.11 was for COP insurance coverage on the Wooten Property, the WLT Property, and other parcels of property in which the Debtor did not hold any ownership or possessory interest, which are more particularly described on **EXHIBIT H** attached hereto and incorporated herein by reference (collectively, the "Prepetition Transfers").

36.    On January 16, 2018, approximately five (5) days prior to the Petition Date, and within the ninety-day period preceding the filing of the Bankruptcy Case (the "Preference Period"), the Debtor remitted a payment to Defendant in the amount of $40,184.00, by Check No. 10080, which was drawn upon the bank account maintained by the Debtor at SunTrust Bank, Account No. **********4830 (collectively, the "Preferential Transfer").

37. The Preferential Transfer represents a partial payment of indebtedness owed to Defendant, and arising from, the COP, CPP, CU, and WCC insurance coverage that was provided by Defendant prepetition.

38. The Prepetition Transfers represent a payment, made by the Debtor to Defendant, by check drawn upon the bank accounts of the Debtor that were maintained at various financial institutions, including SunTrust Bank, Account Nos. **********5592 and ************4830, which were applied towards the outstanding balances of those obligations arising under, and by virtue of, the COP insurance coverage that was issued by Defendant and provided insurance coverage on the Wooten Property, the WLT Property, and other parcels of real property that the Debtor did not hold any ownership or possessory interest at the time of the Prepetition Transfers. Copies of the checks, drawn upon the SunTrust Operating Accounts, and representing the Prepetition Transfers, are attached hereto as **EXHIBIT I** and incorporated herein by reference.

39. Official Form 206Sum, entitled "Summary of Assets and Liabilities for Non-Individuals," which was filed along with the Schedules and Statement of Financial Affairs [D.E. 56], reveals that that Debtor owned total assets of $18,623,408.02, and total liabilities of approximately $27,153,125.47, as of the Petition Date. Copies of the Voluntary Petition [BK D.E. 1], Schedules, and Statement of Financial Affairs [BK D.E. 56] and Amended Statement of Financial Affairs [BK D.E. 67], filed by the Debtor in the Bankruptcy Case, is attached hereto as **EXHIBIT J** and incorporated herein by reference.

40. The Debtor's liabilities ($27,153,125.47) exceeded the value of its assets and property ($18,623,408.02), by at least $8,529,717.45, as of the Petition Date.

13

41.     The Debtor's liabilities exceeded the value of its assets and property, when all of the Prepetition Transfers occurred.

42.     Pursuant to § 547(f) and when the Preferential Transfer was made to, and received by, Defendant, the Debtor was presumed to be insolvent.

43.     In addition to the Prepetition Transfers, the Debtor—after the Petition Date— Debtor remitted numerous payments to, or for the benefit of, Defendant, totaling the sum of at least $307,694.20 of which the sum of $80,493.69 was—upon information and belief—payment for insurance coverage on the Wooten Property and the WLT Property (collectively, the "Post-Petition Transfers").

44.     Specifically, and post-petition, the Debtor remitted the following payments and transfers, drawn upon its debtor-in-possession operating account of the Debtor at United Community Bank, Account No. **********0193 (the "DIP Account"), to Defendant:

| Check No. | Check Date | Transfer/Payment Date | Transfer/Payment Amount |
|---|---|---|---|
| 102035 | 2/9/2018 | 2/12/2018 | $40,055.20 |
| 102136 | 2/20/2018 | 2/23/2018 | $40,120.00 |
| 102421 | 3/21/2018 | 3/26/2018 | 8,262.00 |
| 102673 | 4/17/2018 | 4/20/2018 | $17,857.00 |
| 102971 | 5/21/2018 | 5/24/2018 | $40,563.40 |
| 103265 | 6/25/2018 | 6/28/2018 | $40,193.90 |
| 103485 | 7/23/2018 | 7/25/2018 | $40,242.70 |
| 103766 | 8/27/2018 | 8/30/2018 | $40,200.00 |
| 103978 | 9/26/2018 | 10/1/2018 | $40,200.00 |
|  |  |  |  |
| | TOTAL | | 307,694.20 |

Copies of the checks, drawn upon the DIP Account, and representing the Post-petition Transfers, are attached hereto as **EXHIBIT K** and incorporated herein by reference.

14

45.    Of the foregoing payments and transfers, all of which occurred after the Petition Date, the sum of $80,493.69 was applied towards COP insurance coverage that insured the Wooten Property, the WLT Property, and other real property that the Debtor did not hold any ownership or possessory interest, prior to—or after—the Petition Date

46.    The Debtor was not authorized by the Court to pay the costs, expenses, and premiums to Defendant for insurance coverage on real property, including the Wooten Property and the WLT Property, in which the Debtor did not hold an ownership or possessory interest.

### FIRST CLAIM FOR RELIEF
**Avoidance of Preferential Transfer**
[11 U.S.C. § 547(b)]

47.    Plaintiffs reallege and incorporate herein by reference all the allegations contained in the Complaint as if fully set forth in their entirety.

48.    The Preferential Transfer was a direct and voluntary or involuntary conveyance, disposal, or parting with monetary funds and monetary amounts belonging to the Debtor.

49.    The Preferential Transfers that was made to, and received by, Defendant each constitute a "transfer" within the meaning set forth in § 101(54) of the Bankruptcy Code.

50.    The Preferential Transfer was made to, or for the benefit of, Defendant.

51.    At all times relevant hereunder, and including during the Preference Period and the Preference Period, Defendant was a creditor of the Debtor, with respect to—inter

alia, the CPP, CU, and WCC insurance coverage and policies that were issued to the Debtor, and effective as of January 1, 2017.

52.     Defendant, at all times relevant hereunder, was the initial transferee of the Preferential Transfer, and Defendant was the entity for whose benefit each of the Preferential Transfer was made by the Debtor.

53.     Defendant, upon information and belief, and with respect to the indebtedness that was paid by the Preferential Transfer, was a "creditor" of the Debtor, as that term is defined under §101(10) of the Bankruptcy Code, on account of the purported amounts owed for the insurance coverage and policies that were issued to the Debtor prior to the Petition Date.

54.     The Preferential Transfer was made by the Debtor on account of an antecedent debt owed to Defendant that arose from certain insurance coverage and policies that were issued by Defendant, including the CPP, CU, and WCC insurance coverage that was provided to the Debtor.

55.     The antecedent debt owed by the Debtor to Defendant arose prior to the Petition Date.

56.     When the Preferential Transfer was made to Defendant, the Debtor was indebted to Defendant for amounts in excess of the respective value of the Preferential Transfer.

57.     The Preferential Transfer made to Defendant, by the Debtor, was not in the ordinary course of business or financial affairs of the Debtor.

58.     The Preferential Transfer made to Defendant, by the Debtor, was not in the ordinary course of business or financial affairs of Defendant.

59.     Defendant, in exchange for the Preferential Transfer, did not provide the Debtor with "new value," as defined by § 547(a)(2) of the Bankruptcy Code.

60.     The Preferential Transfer was made to, and received by, Defendant, while the Debtor was "insolvent," as that term is defined under § 101(32) of the Bankruptcy Code.

61.     The Debtor's insolvency is demonstrated and evidenced by the Voluntary Petition, Schedules, and Statement of Financial Affairs [D.E. 1, 56, 57, 67] that were filed in the Bankruptcy Case on January 21, 2018, January 30, 2018, and February 1, 2018, which reveal that Debtor, as of the Petition Date, had total assets of $18,623,408.02, and total liabilities of $27,153,125.47.

62.     At all times relevant hereunder, and during the Preference Period, and up to and including the Petition Date, as evidenced by the foregoing comparison, the Debtor's liabilities exceeded the value of its assets and property on January 16, 2018, the date that the Preferential Transfer occurred.

63.     On January 16, 2018, when the Preferential Transfer was made to Defendant, the Debtor was insolvent and, likewise, was presumed to be insolvent pursuant to 11 U.S.C. § 547(f).

64.     Receipt of the Preferential Transfer enabled Defendant to receive more than it would have otherwise received if the Debtor sought relief under chapter 7 of the Bankruptcy Code.

17

65.    Defendant received more than it would have otherwise received had the Preferential Transfer, which constituted transfers of the Debtor's interest in the funds on deposit, not been made.

66.    Receipt of the Preferential Transfer enabled Defendant to receive more than it would have otherwise received payment of the underlying debts, obligations, and claim to the extent provided by the Bankruptcy Code.

67.    Based upon the foregoing, Plaintiffs are entitled to avoidance of the Preferential Transfer totaling at least $41,184.00, which was made to Defendant within the ninety-day period preceding the Petition Date, as a preferential transfer pursuant to § 547(b) of the Bankruptcy Code.

## SECOND CLAIM FOR RELIEF
### Avoidance of Constructively Fraudulent Transfers
[11 U.S.C. §§ 544 and 548; N.C. Gen. Stat. § 39-23.1 *et seq.*]

68.    Plaintiffs reallege and incorporated herein by reference all the allegations contained in the Complaint as if fully set forth in their entirety.

69.    The Transfers were each a direct and voluntary or involuntary conveyance, disposal, or parting with monetary funds and monetary amounts belonging to the Debtor.

70.    The Transfers made to, and received by, Defendant, each constitute a "transfer" within the meaning set forth in § 101(54) of the Bankruptcy Code.

71.    The Transfers were made to, or for the benefit of, Defendant.

72.    Defendant was not, at any time relevant hereunder, and on the dates of each of the Transfers, a "creditor" of the Debtor, with respect to the CNH-Wooten Contracts or

any other obligations that were owed to Defendant by Wooten, individually, as that term is defined under § 101 of the Bankruptcy Code.

73.     The Debtor was not liable for the debts incurred by Wooten, individually, to Defendant, including those debts and obligations arising from the CNH-Wooten Contracts.

74.     The Transfer was made for less than reasonably equivalent value because the Debtor was not liable for the outstanding debt accruing and rising by virtue of the CNH-Wooten Contracts or any other indebtedness that was incurred by Wooten, individually, and due and payable to Defendant, nor did it receive any benefit for the Transfers that were made to, and received by, Defendant.

75.     The Debtor, through the relinquishment of any and all right, title, and interest in the funds representing the Transfers, did not receive any corresponding reduction in indebtedness owed to Defendant under the CNH-Wooten Contracts because, as set forth herein, the Debtor was not directly or indirectly liable for payment of any of the indebtedness owed to Defendant pursuant to the CNH-Wooten Contracts.

76.     The Debtor, therefore, did not receive reasonably equivalent value in exchange for the Transfers.

77.     At the time of each of the Transfers, Debtor was engaged in business or transactions, or was about to engage in business or transactions, for which any property remaining with it was unreasonably small capital.

78.     At the time of each of the Transfers were made, the Debtor was insolvent, as evidenced by the fact that its outstanding liabilities, as of the Petition Date, totaled $27,153,125.47, when compared to the value of its assets, $18,623,408.02.

79.     In addition to being insolvent, the Debtor—on the dates that each of the Transfers occurred—had negative net income and EBITDA.

80.     At the time of each of the Transfers, the Debtor was indebted, to its primary and senior secured lender, CFG Financial Services, LLC, totaling in excess of $7,622,351.73, and was otherwise not paying its trade debt and other unsecured obligations as they came due.

81.     The Debtor had substantial past due obligations owed to many of its vendors for which it was unable to make timely payment throughout the four-year period prior to the Petition Date, in which the Transfers occurred.

82.     The Debtor was unable to pay its secured and unsecured debts and obligations as they came due at the time of the Transfers.

83.     During the four-year period preceding the filing of the Bankruptcy Case, when each of the Transfers were made, the Debtor intended to incur, or believed it would incur, debts and obligations beyond its ability to pay such debts and obligations once they came due or otherwise matured.

84.     Pursuant to § 548 of the Bankruptcy Code and UVTA, each of the Transfers are avoidable, as constructively fraudulent under the applicable provisions of the Bankruptcy Code and/or North Carolina law.

85.     Based upon the foregoing, Plaintiffs are entitled to avoidance of the Transfers totaling $644,874.12, which were made to Defendant within the four-year period preceding the filing of the Bankruptcy Case, as constructively fraudulent pursuant to § 548 of the Bankruptcy Code and/or N.C. Gen. Stat. § 39-23.1 *et seq.*

### THIRD CLAIM FOR RELIEF
**Avoidance of Unauthorized Post-petition Transfers**
[11 U.S.C. § 549]

86.     Plaintiffs reallege and incorporated herein by reference all the allegations contained in the Complaint as if fully set forth in their entirety.

87.     The Post-petition Transfers were each a direct and voluntary or involuntary conveyance, disposal, or parting with monetary funds and monetary amounts belonging to the Debtor.

88.     The Post-petition Transfers that were made to, and received by, Defendant, each constitute a "transfer" within the meaning set forth in § 101(54) of the Bankruptcy Code.

89.     The Post-petition Transfers totaling at least $80,493.69 were made on February 2, 2018, February 23, 2018, March 26, 2018, April 20, 2018, May 24, 2018, June 28, 2018, July 25, 2018, August 30, 2018, and October 1, 2018 (the "Post-petition Transfer Dates"),  to or for the benefit of, Defendant.

90.     The Post-petition Transfer Dates each occurred after the filing of the Bankruptcy Case.

91.     At all times relevant hereunder, and when the Post-petition Transfers were made, Defendant was purportedly a "creditor" of the Debtor, as that term is defined under

§101(10) of the Bankruptcy Code, because it either held a claim against the Debtor arising from insurance coverage and policies that were issued to the Debtor, including property insurance coverage for parcels of real property that the Debtor neither owned nor possessed, such as the Wooten Property and the WLT Property

92.    Defendant, at all times relevant hereunder, were either the initial transferee of the Post-petition Transfers or the entity for whose benefit the Post-petition Transfers of the Debtor's interest in property was made.

93.    The Post-petition Transfers were made by the Debtor, on account of an antecedent debt that arose prior to the Petition Date.

94.    The Post-petition Transfers, including the fact that they were being remitted to and for the benefit of insiders, i.e., the owners of the Wooten Property and the WLT Property, were not, authorized by the Court, nor made by the Debtor in the ordinary course of business or financial affairs.

95.    The Post-petition Transfers, including the payment of at least $80,493.69 to Defendant, were not authorized by the Bankruptcy Code.

96.    Receipt of the Post-petition Transfers enabled Defendant to receive more than other similarly situated prepetition and post-petition unsecured creditors in the Bankruptcy Case.

97.    Defendant, as the recipient of the Post-petition Transfers, received more than they would have otherwise received had the Post-petition Transfers, which constituted transfers of the Debtor's interest in the funds on deposit in the DIP Account, not been made.

98.     Receipt of the Post-petition Transfers enabled Defendant to receive more than it would have otherwise received payment of the underlying debts, obligations, and claim to the extent provided by the Bankruptcy Code.

99.     Based upon the foregoing, Plaintiffs are entitled to an Order and judgment for avoidance of the Post-petition Transfers totaling at least $80,493.69, which  occurred after the Petition Date, and was not authorized by the Bankruptcy Code or the Court, as unauthorized post-petition transfers pursuant to § 549 of the Bankruptcy Code.

## FOURTH CLAIM FOR RELIEF
### Recovery and Preservation for the Benefit of the Estate
[11 U.S.C. § 550]

100.    Plaintiffs reallege and incorporate herein by reference all the allegations contained in the Complaint as if fully set forth in their entirety.

101.    Defendant is the initial transferee of the Prepetition Transfers, including the Preferential Transfer, as well as the Post-petition Transfers, or the entity for whose benefit said transfers were made.

102.    Plaintiffs are entitled to have and recover judgment against Defendant, in the amount of $40,184.00, representing the value of the Preferential Transfer that was made to, and received by, Defendant within the ninety-day period preceding the Petition Date, and avoided as preferential transfers pursuant to § 547(b) of the Bankruptcy Code, for the benefit of the bankruptcy estate pursuant to § 550 of the Bankruptcy Code.

103.    Plaintiffs are entitled to have and recover judgment against Defendant, in the amount of $355,401.11, or any other amount to be determined by the Court, representing the value of the Prepetition Transfers that were made within the four-year

period preceding the Petition Date, and avoided as constructively fraudulent transfers pursuant to § 548 of the Bankruptcy Code and the UVTA, for the benefit of the bankruptcy estate pursuant to § 550 of the Bankruptcy Code.

104.    Plaintiffs are entitled to have and recover judgment against Defendant, in the amount of $80,493.69, or any other amount to be determined by the Court, representing the value of the Post-petition Transfers that were made after the Petition Date, and avoided as unauthorized post-petition transfers pursuant to § 549 of the Bankruptcy Code, for the benefit of the bankruptcy estate pursuant to § 550 of the Bankruptcy Code.

## **PRAYER FOR RELIEF**

**WHEREFORE,** and based upon the foregoing, Plaintiffs pray that the Court grant the following relief:

1.    Have and recover judgment against Defendant, avoiding and recovering the sum of $40,184.00, representing those payments and transfers that were made to, and received by, Defendant within the ninety-period preceding the filing of the Bankruptcy Case, as preferential transfers pursuant to § 547(b) of the Bankruptcy Code;

2.    Have and recover judgment against Defendant, avoiding the sum of at least $355,401.11, or any other amount to be determined by the Court, representing those payments and transfers that were made to, and received by, Defendant within the four-year period preceding the filing of the Bankruptcy Case, as constructively fraudulent transfers, pursuant to §§ 544 and 548 of the Bankruptcy Code and the UVTA;

3.      Have and recover judgment against Defendant, avoiding the sum of at least $80,493.69, or any other amount to be determined by the Court, representing those payments and transfers that were made to, and received by, Defendant post-petition and filing of the Bankruptcy Case, as unauthorized post-petition transfers, pursuant to § 549 of the Bankruptcy Code;

4.      Have and recover judgment against Defendant, in the amount of $435,894.80, or in such other amount as determined by the Court, pursuant to § 550 of the Bankruptcy Code, together with interest accruing at the maximum legal rate from the date of the filing of this Complaint until paid, with any recovery being for the benefit of, and preserved for, the bankruptcy estate;

5.      Taxing the costs of this adversary proceeding against Defendant; and

6.      Awarding Plaintiffs such further relief as the court may deem just and proper.

Respectfully submitted this, the 21st day of January, 2020.

**STUBBS & PERDUE, P.A.**

BY:    s/Joseph Z. Frost

JOSEPH Z. FROST (NCSB No. 44387)
jfrost@stubbsperdue.com
9208 Falls of Neuse Road, Suite 201
Raleigh, North Carolina 27615
T: (919) 870-6258
F: (919) 870-6259

Counsel for Plaintiff John C. Bircher, III, Plan Trustee for Wayne Bailey, Inc. and Plaintiff Wayne Bailey, Inc.

25